# No. 3:16–cv–00876 (JAG)

In the

# United States District Court
## For the Eastern District of Virginia

———————————

G. Russell Warnick,

*Appellant*,

v.

Richard Arrowsmith, in his capacity as Liquidating Trustee of the HDL Liquidating Trust,

*Appellee*,

LeClairRyan, A Professional Corporation,

*Intervenor-Appellee.*

———————————

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

———————————

**OPENING BRIEF OF APPELLANT G. RUSSELL WARNICK**

———————————

E. Duncan Getchell Jr.
Dion W. Hayes
Ryan D. Frei
Kyle R. Hosmer
McGuireWoods LLP
Gateway Plaza

800 East Canal Street
Richmond, VA 23219
Telephone:   804.775.1000
Facsimile:    804.775.1061
egetchell@mcguirewoods.com
dhayes@mcguirewoods.com
rfrei@mcguirewoods.com
khosmer@mcguirewoods.com

*Counsel for G. Russell Warnick*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ IV

INTRODUCTION ........................................................................................... 1

JURISDICTIONAL STATEMENT ..................................................................... 5

ISSUES PRESENTED ..................................................................................... 6

FACTUAL BACKGROUND & PROCEDURAL HISTORY ...................................... 7

I.      HDL's FORMATION AND RELATIONSHIP WITH LECLAIRRYAN ......................... 7

II.     THE DEPARTMENT OF JUSTICE INVESTIGATES HDL's PRACTICES ................... 8

III.    HDL ENTERS INTO A SETTLEMENT AGREEMENT WITH THE DEPARTMENT
        OF JUSTICE .................................................................................................. 9

IV.     HDL FILES FOR CHAPTER 11 BANKRUPTCY, THE UNSECURED
        CREDITORS COMMITTEE MOVES TO CONDUCT AN EXPANSIVE
        INVESTIGATION, AND THE BANKRUPTCY COURT CONFIRMS HDL's
        SECOND AMENDED PLAN OF LIQUIDATION ................................................... 11

V.      HDL ASSERTS ███████████ IN LEGAL MALPRACTICE CLAIMS AGAINST
        LECLAIRRYAN ............................................................................................. 12

VI.     THE LIQUIDATING TRUSTEE PROPOSES SETTLING THE ESTATE'S CLAIMS
        AGAINST LECLAIRRYAN FOR PENNIES ON THE DOLLAR ............................... 13

VII.    THE BANKRUPTCY COURT IMPROPERLY PRE-ADJUDICATES
        LECLAIRRYAN'S RIGHTS UNDER AND INCORRECTLY APPLIES SECTION
        8.01-35.1 ................................................................................................... 15

SUMMARY OF ARGUMENT ........................................................................... 19

STANDARD OF REVIEW ................................................................................ 21

ARGUMENT ................................................................................................ 21

i

I.   THE PROTECTIONS OF SECTION 8.01-35.1 ARE NOT AVAILABLE TO LECLAIRRYAN IN THE KNOWN CIRCUMSTANCES ..........................................21

     A.   Section 8.01-35.1 does not apply to contribution liability that arises from economic loss in the absence of injury to person or property or wrongful death.................................................................22

     B.   Legal Malpractice is a breach of contract action for which only economic damages are available.......................................................27

     C.   If in doubt, the Court should certify to the Supreme Court of Virginia the question of whether section 8.01-35.1 encompasses contribution liability that arises from economic loss absent injury to person or property or wrongful death ...........................................29

II.  THE BANKRUPTCY COURT WRONGLY PRE-ADJUDICATED LECLAIRRYAN'S ENTITLEMENT TO THE PROTECTIONS OF SECTION 8.01-35.1 ............................................................................................................31

     A.   The U.S. Constitution prohibits advisory opinions............................32

     B.   A party's joint liability must first be determined before a court can address the protections of section 8.01-35.1 ...............................33

     C.   Despite purported reassurances to the contrary, the bankruptcy court pre-adjudicated LeClairRyan's protection from contribution liability.........................................................................35

III. THE BANKRUPTCY COURT ABUSED ITS DISCRETION BY EXCLUDING THE DEMAND LETTER FROM EVIDENCE AT THE 9019 HEARING ...........................40

     A.   The Demand Letter asserts ███████████ claims against LeClairRyan ....................................................................................40

     B.   The Demand Letter is not a settlement communication ...................42

     C.   Federal Rule of Evidence 408 prohibits the use of settlement communications in only two inapplicable circumstances.................44

     D.   The Demand Letter identifies the nature of claims against LeClairRyan that the Settlement resolves .........................................45

PRAYER FOR RELIEF ............................................................................................48

ORAL ARGUMENT STATEMENT ..............................................................................48

CERTIFICATE OF COMPLIANCE ..............................................................................50

CERTIFICATE OF SERVICE......................................................................................51

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Acordia of Va. Ins. Agency, Inc. v. Genito Glenn, LP*,
263 Va. 377 (2002) ............................................................................33

*Allianz Ins. Co. v. Garrett*,
47 F.3d 665 (4th Cir. 1995) ..............................................................31

*Am. Online, Inc. v. Nat'l Health Care Discount, Inc.*,
174 F. Supp. 2d 890 (N.D. Iowa 2001) .............................................34

*Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. of Am.,
Div. 998 v. Wisconsin Emp't Relations Bd.*,
340 U.S. 416 (1951)...........................................................................32

*In re Anderson*,
811 F.3d 166 (4th Cir. 2016) ............................................................20

*Askew v. Collins*,
283 Va. 482 (2012) ............................................................................33

*Basha v. Mitsubishi Motor Credit of Am. Inc.*,
336 F.3d 451 (5th Cir. 2003) ............................................................47

*Beard Plumbing & Heating, Inc. v. Thompson Plastics, Inc.*,
152 F.3d 313 (4th Cir. 1998) ............................................................25

*Blake Const. Co., Inc. v. Alley*,
233 Va. 31 (1987) ..............................................................................25

*Calderon v. Ashmus*,
523 U.S. 740 (1998)...........................................................................33

*Catullo v. Metzner*,
834 F.2d 1075 (1st Cir. 1987)...........................................................47

*Central Soya Co., Inc. v. Epstein Fisheries, Inc.*,
676 F.2d 939 (7th Cir.1982) .............................................................47

*Coakley & Williams Const., Inc. v. Structural Concrete Equip., Inc.*,
    973 F.2d 349 (4th Cir. 1992) ..............................................................44

*Coffman v. Breeze Corp.*,
    323 U.S. 316 (1945)....................................................................32, 33

*Cox v. Geary*,
    271 Va. 144 (2006) ...........................................................23, 27, 28

*Crawford v. Deutsche Bank AG*,
    244 F. Supp. 2d 615 (E.D. Va. 2003) ................................................25

*The David J. Pierce Trust U/A Dated Feb. 23, 2011 v. Alpha Natural
    Res., Inc.*,
    No. 3:16–cv–00709 (HEH) (E.D. Va. Dec. 21, 2016) ......................31

*Dur v. W. Branch Diesel, Inc.*,
    240 F. App'x 568 (4th Cir. 2007) .....................................................25

*Virginia ex rel. Fair Housing Bd. v. Windsor Plaza Condo. Ass'n*,
    289 Va. 34 (2014) ............................................................................26

*Fid. Nat'l Title Ins. Co. v. Radford*,
    No. 7:15–cv–00018 (MFU), 2015 WL 6958291 (W.D. Va. Nov.
    10, 2015) ..........................................................................................28

*Flannigan v. Consol. Rail Corp.*,
    888 F.2d 127, 1989 WL 130634 (6th Cir. Nov. 2, 1989)
    (unpublished) ...................................................................................38

*Flast v. Cohen*,
    392 U.S. 83 (1968)...........................................................................32

*Hall v. Beals*,
    396 U.S. 45 (1969)...........................................................................32

*Hayman v. Patio Prods., Inc.*,
    226 Va. 482 (1984) ....................................................................22, 23

*Howlette v. Hovis*,
    318 F. Supp. 2d 332 (E.D. Va. 2004) ...............................................12

v

*Jacksonville Airport, Inc. v. Michkeldel, Inc.*,
  434 F.3d 729 (4th Cir. 2006) ............................................................21

*JSR Mech., Inc. v. Aireco Supply, Inc.*,
  291 Va. 377 (2016) .......................................................................26

*Lackey v. Brooks*,
  204 Va. 428 (1963) .......................................................................22

*McBride v. Tully Rinckey, PLLC*,
  No. 7:12–cv–00344 (JCT), 2012 WL 6582538 (W.D. Va. Dec. 10,
  2012) ...........................................................................................28

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007)........................................................................33

*Murdaugh Volkswagen, Inc. v. First Nat'l Bank of S.C.*,
  741 F.2d 41 (4th Cir. 1984) ..............................................................38

*O'Connell v. Bean*,
  263 Va. 176 (2002) .......................................................................12

*Oleyar v. Kerr*,
  217 Va. 88 (1976) .........................................................................12

*Oswald v. Holtzman*,
  No. CL–2013–16999, 2015 WL 10521430 (Va. Cir. Ct. Jan. 20,
  2015) ...........................................................................................34

*Preiser v. Newkirk*,
  422 U.S. 395 (1975)........................................................................32

*Rhoades v. Avon Prods., Inc.*,
  504 F.3d 1151 (9th Cir. 2007) ...........................................................44

*Rodriguez-Garcia v. Municipality of Caguas*,
  495 F.3d 1 (1st Cir. 2007)................................................................43

*Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*,
  236 Va. 419 (1988) .......................................................................24

*Smith v. McLaughlin*,
    289 Va. 241 (2015) ....................................................................................27, 28

*Tazewell Oil Co. v. United Virginia Bank/Crestar Bank*,
    243 Va. 94 (1992) ...................................................................................33

*Thorsen v. Richmond Soc'y for the Prevention of Cruelty to Animals*,
    292 Va. 257 (2016) ...............................................................................27

*United States v. Duncan*,
    38 F. App'x 128 (4th Cir. 2002) ..........................................................38

*United States v. Hassouneh*,
    199 F.3d 175 (4th Cir. 2000) ...............................................................21

*United States v. Lavabit*,
    749 F.3d 276 (4th Cir. 2014) ...............................................................38

*United States v. Young*,
    248 F.3d 260 (4th Cir. 2001) ...............................................................21

*William H. Gordon Assocs., Inc. v. Heritage Fellowship, United
    Church of Christ*,
    291 Va. 122 (2016) ............................................. 23, 24, 28, 29, 34, 35

*Winchester Packaging, Inc. v. Mobil Chem. Co.*,
    14 F.3d 316 (7th Cir. 1994) ..........................................................42, 43

*Wright v. Orlowski*,
    218 Va. 115 (1977) ...............................................................................22

## STATUTES

28 U.S.C. § 157 ..................................................................................5

28 U.S.C. § 158(a)(1) .........................................................................6

28 U.S.C. § 1334 ................................................................................5

42 U.S.C. § 1320a–7b(b) ...................................................................8

Va. Code Ann. § 8.01-35.1 ...........................................................*passim*

Va. Code Ann. § 59.1–155.1.................................................................26

Va. Code Ann. § 18.2–186.6(I).............................................................25

## OTHER AUTHORITIES

42 C.F.R. § 1001.952(d) ........................................................................8

42 C.F.R. §§ 1008.1, –.5, –.51, –.53, –.55, –.59...................................9

Fed. R. Bankr. P. 2004.........................................................................11

Fed. R. Bankr. P. 8019(b) ....................................................................48

Fed. R. Evid. 408 ...........................................................................*passim*

Va. Sup. Ct. Rule 5:40 ....................................................................30, 31

2007 Boyd-Graves Conference Subcommittee Report......................23, 30

13 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3529.1 (3d ed. 1998) ......................................................32

Linda Flory Rigsby, *The Covenant Not to Sue: Virginia's Effort to Bury the Common Law Rule Regarding the Release of Joint Tortfeasors*, 14 U. Rich. L. Rev. 809, 809 (1980)......................22, 23

Publication of OIG Special Fraud Alerts, 59 Fed. Reg. 65372–01, 1994 WL 702552 (Dec. 19, 1994) .....................................................9

Robert N. Baecs, *Health Care Fraud Under the New Medicare Part D Prescription Drug Program*, 96 J. Crim. L. & Criminology 727, 739 (Winter 2006).................................................................................9

## INTRODUCTION[1]

| | |
|---|---|
| THE COURT: | *It seems like everyone is saying the same thing here, and why can't we just put that in the order then?* |
| MR. KANOWITZ: | *It wasn't the deal, and I'm not going to get paid, and it's going to blow up, and that's what they want.* |
| THE COURT: | *Okay.*[2] |

On October 14, 2016, after more than six months of "hard-fought" negotiations, the bankruptcy court approved a roughly $20 million settlement between the Liquidating Trustee of the HDL Liquidating Trust and LeClairRyan that resolved ▇▇▇▇▇▇▇▇ in legal malpractice claims.  App. 411–12, 1001; Demand Letter at 9.[3]  The Liquidating Trustee described the Settlement as "a watershed moment."  App. 1014 (argument of R. Kanowitz).  He claimed that "[a]ll the creditors" of HDL "are ecstatic" and gushed that the result was "outstanding, period; extraordinary."  *Id*.

The enthusiasm with which the Liquidating Trustee described his deal with LeClairRyan ignores legal defects in the Settlement Agreement that the bankruptcy

---

[1] Capitalized terms used in the Introduction are defined *infra*.

[2] App. 1033.

[3] The Demand Letter is the subject of a pending Motion to File Under Temporary Seal, and on account of that, Warnick has made corresponding redactions throughout this brief.  *See* No. 3:16–cv–00876 (JAG), Dkt. 13–16, 18 (E.D. Va.).  Out of caution, Warnick will file the Demand Letter in a supplemental appendix after the Court has resolved the motion, or at the Court's request.

court approved and incorporated by express reference into a fatally flawed Order. First, the Settlement Agreement "entitled" LeClairRyan "to the benefits and protections available to released parties under" section 8.01-35.1 of the Virginia Code. App. *Id.* 962–63. Second, applying section 8.01-35.1, the Settlement Agreement "discharged" LeClairRyan "from all liability for contribution to any other person alleged or found to be liable as a joint tortfeasor for any and all claims" resolved therein. *Id.* at 962. And third, the bankruptcy court's Order—which the Liquidating Trustee drafted with the input of LeClairRyan and its insurance carriers—incorporated the Settlement Agreement by express reference and similarly "entitled" LeClairRyan to and "afforded" the firm "the full protection" of section 8.01-35.1. *Id.* at 950.

Section 8.01-35.1 of the Virginia Code incentivizes settlements in multi-defendant litigation: the statute abrogates the common law rule that a release of one liable party releases all others jointly liable "for the same injury to a person or property, or the same wrongful death[.]" *See* Va. Code Ann. § 8.01-35.1(A)(1). Section 8.01-35.1 further "discharge[s] the [party] to whom [the release or covenant not to sue] is given from all liability for contribution to any other person liable for the same injury to person or property or the same wrongful death." *Id.* § 8.01-35.1(A)(2). Finally, the statute reduces the total liability of the non-settling parties

2

by "any amount stipulated by the covenant or the release, or in the amount of the consideration paid for it, whichever is greater." *Id.* § 8.01-35.1(A)(1).

Yet, for all its virtues, section 8.01-35.1—on its face—does *not* apply to contribution liability that arises from economic loss in the absence of injury to person or property or wrongful death.  Nor does it entitle a settling party to a premature adjudication of its defenses to contribution liability.  Rather, the protections of section 8.01-35.1 come into play only after a settling party has been found jointly liable with one or more other parties "for the same injury to a person or property, or the same wrongful death." *Id.* § 8.01-35.1(A), (A)(2).  Here, however, the Liquidating Trustee persuaded the bankruptcy court to violate such restrictions.

Why would the Liquidating Trustee ask the bankruptcy court to wrongly and prematurely immunize LeClairRyan from contribution liability that may arise from the firm's alleged legal malpractice?  And why would he do so in the face of numerous and repeated objections to the proposed Settlement that identified these errors and timely asked that they be corrected?  Because LeClairRyan demanded that such language be included in the Settlement Agreement and in the proposed Order approving it. *See, e.g.*, App. 1011, 1013 (cross-examinations of R. Kanowitz). Indeed, as counsel for the Liquidating Trustee expressly testified and emphasized to the bankruptcy court, if the language was not included in the form that LeClairRyan

3

insisted, the Settlement would "fall apart," the HDL Liquidating Trust would not receive a cash infusion, and the Liquidating Trustee would lose his watershed moment.   *Id.* at 1011, 1012, 1033 (cross-examinations and argument of R. Kanowitz).

That rationale, however, does not entitle LeClairRyan to the protections of section 8.01-35.1 when the firm's potential contribution liability arises from economic loss resulting from legal malpractice.   Nor did it empower the bankruptcy court to pre-adjudicate LeClairRyan's entitlement to contribution immunity when no court has found that LeClairRyan was jointly liable with any other party for the same injury to person or property or wrongful death.   Accordingly, this Court should reverse and vacate the bankruptcy court's approval of the Liquidating Trustee's Settlement with LeClairRyan because it wrongly applied section 8.01-35.1 of the Virginia Code.

The Court should also reverse the exclusion of the Liquidating Trustee's October 26, 2015 Demand Letter from evidence at the September 22, 2016 hearing on the Settlement.   During that proceeding, the Liquidating Trustee tendered the Demand Letter to the court for identification purposes only.   When counsel for G. Russell Warnick moved to admit it into evidence, the bankruptcy court denied the request (after first granting it) on the ground that the Demand Letter is protected by Federal Rule of Evidence 408.

4

For two reasons, that decision was wrong.  First, the Demand Letter is not a settlement communication within the meaning of Federal Rule of Evidence 408, rendering that rule inapplicable.  Second, assuming *arguendo* that it could otherwise apply, Rule 408 prohibits the use of settlement communications for two purposes only: to prove or disprove the validity or amount of a disputed claim, or to impeach by a prior inconsistent statement or a contradiction.  No party attempted to use the Demand Letter for such purposes here—Warnick offered it for the express purpose of identifying the nature of claims that the Settlement resolved.  Yet the bankruptcy court excluded it from evidence entirely under that limited rule.

The Demand Letter is the most detailed description of the ███████ claims that the Liquidating Trustee asserted against LeClairRyan.  It is therefore directly relevant to the proposed Settlement, to the incorrect application of section 8.01-35.1, and to the objections thereto.  The bankruptcy court should have admitted the Demand Letter into evidence.  By not doing so, the bankruptcy court abused its discretion and this Court should reverse its evidentiary ruling.

## JURISDICTIONAL STATEMENT

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 157 and 1334 because the Liquidating Trustee's Settlement with LeClairRyan is a core proceeding.  The bankruptcy court entered a final order approving the Settlement on October 14, 2015.  App. 949.  Warnick timely filed a notice of appeal on October 28, 2016.  *Id.*

at 968. This Court has jurisdiction under 28 U.S.C. § 158(a)(1) because Warnick appealed from a final decision of the bankruptcy court.

### ISSUES PRESENTED

1.      Whether the bankruptcy court erred by finding that LeClairRyan was "entitled to" and "afforded" the full protection of section 8.01-35.1 of the Virginia Code, even though the statute does not apply to contribution liability arising from economic loss in the absence of injury to person or property or wrongful death.

2.      Notwithstanding the statute's limited scope, whether the bankruptcy court erred by pre-adjudicating LeClairRyan's entitlement to the "full protection" of section 8.01-35.1 and "discharg[ing] LeClairRyan from all liability for contribution" when no court has determined that LeClairRyan and any other party are liable for the same "personal or property injury or wrongful death" and no party has sued the firm for contribution.

3.      Whether the bankruptcy court erred by excluding—after first admitting—the Demand Letter from evidence as "completely protected" by Federal Rule of Evidence 408, even though it is not a settlement communication and no party offered it to prove the validity or amount of a claim or to impeach any party by a prior inconsistent statement or contradiction.

## FACTUAL BACKGROUND & PROCEDURAL HISTORY

### I.  HDL's Formation and Relationship with LeClairRyan

Health Diagnostic Laboratory, Inc. ("HDL") was a Richmond-based laboratory that specialized in panel tests for the early detection of cardiovascular disease, diabetes, and related ailments.  App. 253, 529, 553.  LaTonya Mallory, Joseph McConnell, and G. Russell Warnick co-founded HDL in late 2008.  *Id*. at 529, 553.  Mallory served as HDL's CEO until September 2014 and as chairperson of its Board of Directors until November 2014.  *Id*. at 531–32, 593.  McConnell served as Chief Medical Officer until September 2014, when he assumed the role of CEO.  *Id*. at 532.  And Warnick served as Chief Scientific Officer, beginning July 10, 2009.  *Id*. at 533.  Both McConnell and Warnick also served as members of HDL's Board of Directors—McConnell from 2009 and Warnick from 2011.  App. 532–33.

LeClairRyan, A Professional Corporation ("LeClairRyan") acted as counsel to HDL from the company's infancy.[4]  Indeed, from at least October 2009 through 2015, LeClairRyan advised HDL on a number of ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ issues.  *Id.* at 411; *see* Demand Letter at 2.  In particular, LeClairRyan provided HDL with legal opinions on ▮▮▮▮▮▮▮▮▮▮▮▮

---

[4]  LeClairRyan also acted as counsel to HDL's founders on various matters, including estate planning.  *See* App. 1041–47.

7

███████████████████████████████████.   Demand Letter at 2.

Among other things, LeClairRyan:



*Id.*  Notably, LeClairRyan ██████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████   *Id.*

## II.  The Department of Justice Investigates HDL's Practices

In early 2013 HDL received a subpoena from the Department of Justice regarding certain of its business practices and activities.  App. 938.  The Department of Justice investigation focused on whether HDL's payment of processing and handling fees to physicians violated federal anti-kickback laws—a subject on which LeClairRyan provided extensive legal advice.  *Id.*; *see also* Demand Letter at 1–2.

During the pendency of the Department of Justice investigation, on June 25, 2014, the Office of Inspector General of the Department of Health and Human

Services (the "<u>OIG</u>") issued a special fraud alert (the "<u>Special Fraud Alert</u>").[5]  App. 938; Demand Letter at 6.  The Special Fraud Alert identified practices that the OIG believes may induce physicians to refer specimens and tests to a particular laboratory, possibly in violation of anti-kickback laws.  *See* App. 938.  Among other things, the Special Fraud alert ██████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████  Demand Letter at 6 (quoting the Special Fraud Alert).

## III.    HDL Enters into a Settlement Agreement with the Department of Justice

On April 9, 2015, the Department of Justice announced that it had entered into settlement agreements with two cardiovascular testing disease laboratories— including HDL—that concerned claims arising from the payment of processing and

---

[5]  As a general matter, in contrast to advisory opinions issued to a particular party in specific circumstances, special fraud alerts do not make binding pronouncements on the legality of any practice. *See, e.g*., Publication of OIG Special Fraud Alerts, 59 Fed. Reg. 65372–01, 1994 WL 702552 (Dec. 19, 1994) (describing the OIG's use of fraud alerts); *see also* Robert N. Baecs, *Health Care Fraud Under the New Medicare Part D Prescription Drug Program*, 96 J. Crim. L. & Criminology 727, 739 (Winter 2006) ("Although Special Fraud Alerts are not regulations having the force of law, they . . . provide the OIG's interpretation of the Anti-Kickback Statute as applied to various factual situations."). *Cf.* 42 C.F.R. §§ 1008.1, –.5, –.51, –.53, –.55, –.59 (discussing the issuance and limits of advisory opinions).

handling fees to healthcare providers.  The settlement with HDL resolved allegations that the laboratory ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

Demand Letter at 1.  In particular, the Department of Justice alleged that HDL:

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████

Demand Letter at 1 (internal quotations and alterations removed).  For its part, HDL agreed to pay the government $47 million over five years and entered into a Corporate Integrity Agreement with the OIG.  App. 595, 938.

In addition to the significant payment and the Corporate Integrity Agreement, the Liquidating Trustee alleges that HDL's settlement with the Department of Justice had knock-on effects.  First, he claims that it garnered considerable media attention. *Id.* at 255–57.  More significantly, he believes that it contributed to substantial declines in HDL's revenue.  *Id.* at 257.  And, ultimately, he contends that it was a "precipitating cause[] of" HDL's bankruptcy.  *Id.* at 411.

IV.    **HDL Files for Chapter 11 Bankruptcy, the Unsecured Creditors Committee Moves to Conduct an Expansive Investigation, and the Bankruptcy Court Confirms HDL's Second Amended Plan of Liquidation**

On June 7, 2015, HDL and two affiliates—Central Medical Laboratory, LLC and Integrated Health Leaders, LLC (collectively with HDL, "HDL")—each filed a voluntary petition for chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Eastern District of Virginia.  App. 937.  The United States Trustee appointed a seven-member Unsecured Creditors Committee nine days later, on June 16, 2015.  *Id.* at 598–99.

On September 30, 2015, the Unsecured Creditors Committee requested authorization from the bankruptcy court to conduct a wide-ranging investigation of HDL, its directors, officers, shareholders, and accountants, and a number of third parties—including LeClairRyan—pursuant to Federal Rule of Bankruptcy Procedure 2004 (the "Rule 2004 Motion").  *Id.* at 248, 266–67, 411.  By its Rule 2004 Motion, the Unsecured Creditors Committee sought to investigate whether any claims or causes of action existed against these entities and individuals.  *Id.* at 267.

More to the point, the Unsecured Creditors Committee believed that HDL's settlement with the Department of Justice indicated that HDL's "success was apparently premised upon a business model based upon kickbacks and referrals which spurred [HDL's] growth through the ordering of potentially unnecessary tests by physicians."  *Id.* at 250.  The bankruptcy court heard the Rule 2004 Motion on

11

October 22, 2015, and soon after authorized the Unsecured Creditors Committee's requested Rule 2004 examinations.  App. 294.

Later, on May 12, 2016, the bankruptcy court confirmed HDL's Second Amended Plan of Liquidation (the "Plan").  *Id.* at 298.  Per the terms of the Plan, the HDL Liquidating Trust was formed the same day.  *Id.* at 357, 375–76.  The Plan named Richard Arrowsmith, who previously served as HDL's Chief Restructuring Officer, interim Liquidating Trustee of the HDL Liquidating Trust (the "Liquidating Trustee").  *Id.* at 359.

## V.   HDL Asserts ▮▮▮▮▮▮▮ in ▮▮▮▮▮▮▮ Claims Against LeClairRyan

Early in its bankruptcy case, HDL asserted claims against LeClairRyan for the firm's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮.[6]  *See generally* Demand Letter.  Specifically, on October 26, 2015, Richard Arrowsmith—then HDL's Chief Restructuring Officer—sent LeClairRyan a demand letter asserting ▮▮▮▮▮▮▮▮▮▮▮▮ (the "Demand Letter").  *Id.*  The Demand Letter first ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮.  It then ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[6]  Under Virginia law, as discussed *infra*, "'an action for the negligence of an attorney in the performance of professional services, while sounding in tort, is an action for a breach of contract.'"  *O'Connell v. Bean*, 263 Va. 176, 181 (2002) (quoting *Oleyar v. Kerr*, 217 Va. 88, 90 (1976)); see also *Howlette v. Hovis*, 318 F. Supp. 2d 332, 336 (E.D. Va. 2004) (dismissing legal malpractice claim asserted as negligence cause of action).



*Id.* at 1–4.

In short, the Demand Letter notes ███████████████████████████

██████████████████████████████████████████████

███████████████████. *See id.* at 4. ███████████████████ the Demand

Letter claims, ████████████████████████████████. *Id.* at 4–8.

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████, the Demand Letter alleged ██████████████████████

███████████████████████████ Demand Letter at 9.  The Demand

Letter ████████████████████████████████ *Id.*

Counsel for HDL provided a copy of the Demand letter to counsel for Warnick

and counsel for other members of HDL's Board of Directors on October 28, 2015.

In so doing, HDL's counsel asked the recipients to "treat [the Demand Letter] as

confidential board material since part of the pitch to [LeClairRyan] will be that they

should resolve [HDL's demand] before the matter becomes public."  App. 998

(direct examination of R. Kanowitz).

## VI.   The Liquidating Trustee Proposes Settling the Estate's Claims Against LeClairRyan for Pennies on the Dollar

After more than six months of negotiations, the Liquidating Trustee and

LeClairRyan reached a settlement of the claims that the HDL Liquidating Trust

13

holds against the law firm (the "Settlement").[7]   App. 411–12, 1001 (direct examination of R. Kanowitz).   For its part in causing ████████████████████ in alleged damage to HDL, the Settlement requires LeClairRyan to pay the HDL Liquidating Trust slightly more than $20 million.  *Id.* at 412–13.  In return, the firm receives a broad release of all claims that the HDL Liquidating Trust holds or is assigned.  *Id.*

Importantly, as part of the Settlement, LeClairRyan demanded that it receive immunity from contribution liability pursuant to section 8.01-35.1 of the Virginia Code.  *See, e.g.*, *id.* at 1011, 1013 (cross-examinations of R. Kanowitz).  If it did not, the Settlement would have "fall[en] apart."  *Id.* at 1011–12 (cross-examination of R. Kanowitz).

The contribution immunity that LeClairRyan demanded appears in Section 10 of the settlement agreement that the firm executed with the Liquidating Trustee (the "Settlement Agreement").  App. 962–63.  That section provides:

> [p]ursuant to Code of Virginia § 8.01-35.1.A.2, the releases granted in Section 8 of [the Settlement Agreement] operate to discharge LeClairRyan from all liability for contribution to any other person alleged or found to be liable as a joint tortfeasor for any and all claims released by those paragraphs.  LeClairRyan shall have and be entitled to the benefits and protections available to released parties under Code of Virginia § 8.01-35.1, and the Bankruptcy Court shall retain

---

[7]   Among other things, the Second Amended Plan of Litigation transferred certain of HDL's litigation claims to the HDL Liquidating Trust—including the claims that the laboratory held against LeClairRyan.  App. 329–31.

jurisdiction over all proceedings in which a person or entity seeks to deprive LeClairRyan of such benefits and protections.

*Id.*

On September 1, 2016, the Liquidating Trustee asked the bankruptcy court to approve the Settlement pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "9019 Motion"). *Id.* at 409. Warnick objected to the 9019 Motion on September 15, 2016. *Id.* at 485. So did Mallory, McConnell, Tipton Golias, Joseph Golias, Donald Golias, Wyndell L. Golias Voting Trust, Helena Laboratories Corporation, Karla Falgout, Pamela Oates, Eric Petersen, John Tessler, David Mayes, Noel Bartlett, and Robert Galen. *Id.* at 937. Satyanarain Rangarajan, Floyd Calhoun Dent III, Bradley Johnson, and BlueWave Healthcare Consultants, Inc. joined in the objections. App. 937–38.

## VII.   The Bankruptcy Court Improperly Pre-adjudicates LeClairRyan's Rights Under and Incorrectly Applies Section 8.01-35.1

The bankruptcy court held an evidentiary hearing on the 9019 Motion on September 22, 2016 (the "9019 Hearing").[8] At the 9019 Hearing, the Liquidating

---

[8] A mere six days prior, the Liquidating Trustee filed a nearly 1100-paragraph, 76-count complaint against roughly 100 parties—including Warnick—that requests damages in excess of $600 million (the "Omnibus Complaint"). *See, e.g.*, App. 515, 676. Counsel for the Liquidating Trustee described the pleading as "a life-altering complaint." *Id.* at 1015 (argument of R. Kanowitz). And, although the Settlement proposed barring their contribution claims against LeClairRyan, the Liquidating Trustee did not serve the 9019 Motion on all of the Omnibus Complaint defendants. *Compare id.* at 515–17 *with id.* at 1050–56.

Trustee described how he believed that the Settlement with LeClairRyan was a good result for the HDL Liquidating Trust.  In the course of that argument and related examination, counsel for the Liquidating Trustee tendered the Demand Letter to the bankruptcy court for identification purposes only and requested that it be accepted "under seal, preserving all privileges and confidentiality."  *See* App. 995–97 (examination of R. Kanowitz and tender by C. Speckhart).

When counsel for Warnick moved the bankruptcy court to admit the Demand Letter into evidence, the bankruptcy court denied that request—after first granting it—on the basis that the Demand Letter was a settlement communication protected by Rule 408 of the Federal Rules of Evidence.[9]  *Id.* at 1002–08.

Because it was an apparently essential component of the Settlement, the contribution immunization necessary to LeClairRyan's entry into the Settlement received considerable attention at the 9019 Hearing.  *See, e.g.*, *id.* at (cross-examination of R. Kanowitz).  Numerous objectors argued that the Liquidating Trustee asked the bankruptcy court to improperly and prematurely adjudicate LeClairRyan's rights under the statute.  *Id.* at 1016–21, 1024–27, 1029–36 (arguments of D. Hayes, K. Hroblak, J. Manson, J. Davis, and K. Funk).

---

[9]  Out of an abundance of caution, counsel for Warnick even offered the bankruptcy court an alternative, redacted version of the Demand Letter.  The alternative version of the Demand Letter omitted the alleged amount of the claim that HDL asserted against LeClairRyan.  App. 1007–08.

Notably, although LeClairRyan did not file any papers in support of the 9019 Motion, its counsel did appear at the 9019 Hearing. *Id.* at 1037–39. After listening to hours of argument in opposition to the Settlement and receiving invitations to weigh in, how did LeClairRyan respond to the claims that it, *inter alia*, demanded an incorrect application of section 8.01-35.1? With silence. In contrast to nearly every other party, counsel for LeClairRyan did not address section 8.01-35.1. *See* App. 1037–39. Rather, counsel for LeClairRyan stated that he was "without authority to agree to starting to tweak and improve and edit" the Settlement, which he described as a "pretty simple straightforward agreement." *Id.* at 1038.

Nevertheless, the bankruptcy court issued an order approving the Liquidating Trustee's Settlement with LeClairRyan—which order the Liquidating Trustee drafted—on October 14, 2016 (the "Order"). *Id.* at 949. The Order declares that "LeClairRyan is entitled to, and is [] afforded, the full protection of Virginia Code § 8.01-35.1." *Id*. at 950. The bankruptcy court's Order further incorporated Section 10 of the Settlement Agreement, and thereby "discharge[d] LeClairRyan from all liability for contribution to any other person alleged or found to be liable [to HDL] as a joint tortfeasor for any and all claims[.]" *Id.*

In addition to its Order, the bankruptcy court also issued a memorandum opinion (the "Opinion"). *Id.* at 936. There, the bankruptcy court contradicted and attempted to walk back from the broad, conclusive language of the Order and of the

17

Settlement Agreement.   In relevant part, the bankruptcy court stated that, by referencing section 8.01-35.1 in the Order, it was merely "confirming . . . that the Settlement Agreement qualifies as a covenant not to sue or release"—which is only one of several elements that must be satisfied for the statute to apply.  *Id.* at 947; *see also* Va. Code Ann. § 8.01-35.1(A).[10]

The bankruptcy court further wrote in the Opinion that "[t]he Liquidating Trustee [did] not seek, nor [was] he getting[,] a preadjudication of the impact of § 8.01-35.1 on any future claims or defenses that" may be asserted by third parties against LeClairRyan.  App. 947.  Finally, notwithstanding its direct statements to the contrary in the Order, the bankruptcy court wrote in its Opinion that "[t]he appropriate time to make a determination about the application of Va. Code § 8.01-35.1 is in the future, when claims or defenses asserted by or against" third parties "are considered."  *Id.*

On October 28, 2016, Warnick timely appealed the bankruptcy court's Order and "all adverse orders, rulings (evidentiary or otherwise), decrees, opinions, and judgments leading up to, merged into, or included within" it.  *Id.* at 968.  Mallory also appealed the Order that day.

---

[10]     Section 8.01-35.1(A) conditions the availability and application of contribution protection on a settlement being (1) a "release or covenant not to sue" that is (2) "given in good faith" to (3) "one or more persons liable for the same injury," and requiring that "same injury" to be (4) to "a person or property, or the same wrongful death."

## SUMMARY OF ARGUMENT

I.     Section 8.01-35.1 does not apply to contribution liability that arises from contract-based economic loss in the absence of injury to person or property or wrongful death.  And although the General Assembly amended the statute in 2007 to remove references to "tortfeasors," that amendment did not change the statute's limited application: unless the contribution liability arises from personal injury, injury to property, or wrongful death, section 8.01-35.1 does not apply.  Because the Liquidating Trustee's claims against LeClairRyan arise from legal malpractice, the protections of section 8.01-35.1 are not available to LeClairRyan, as legal malpractice is a breach of contract claim for which non-economic damages cannot be recovered.

II.     Alternatively, if the Court is in doubt of the conclusion that section 8.01-35.1 does not encompass contribution liability that arises from economic loss in the absence of injury to person or property or wrongful death, it should certify this dispositive question of Virginia law to the Supreme Court of Virginia.

III.     The bankruptcy court erred by finding that LeClairRyan is "entitled to . . . and . . . afforded the full protection" of section 8.01-35.1, notwithstanding the limited breadth of the statute.  No party has sued LeClairRyan for contribution, nor has any court made a determination that the firm is jointly liable for the "same injury to a person or property or the same wrongful death."  Thus, the protections of section

19

8.01-35.1 are unavailable to LeClairRyan at this time, and the bankruptcy court erred by ruling otherwise.

IV.    Finally, the Demand Letter is not a settlement communication within the meaning of Federal Rule of Evidence 408.   Accordingly, Rule 408 did not bar its admission at the 9019 Hearing.   But even assuming *arguendo* that the Demand Letter were properly considered a settlement communication, it was not offered for a prohibited purpose.   Rule 408 limits the use of settlement communications in only two circumstances: when they are used to prove or disprove the validity or amount of a disputed claim, or when they are used to impeach by a prior inconsistent statement or a contradiction.

The Demand Letter was neither offered nor used for either of Rule 408's prohibited purposes during the 9019 Hearing.   Rather, counsel for Warnick moved to admit the Demand Letter into evidence to identify the nature of the claims asserted by the Liquidating Trustee against LeClairRyan—which bears directly on the propriety of the bankruptcy court's immunization of LeClairRyan for contribution liability under section 8.01-35.1 of the Virginia Code.   Nevertheless, the bankruptcy court excluded the Demand Letter from evidence at the 9019 Hearing—after initially admitting it—on the ground that it was inadmissible under Rule 408.   In so ruling, the bankruptcy court abused its discretion.

20

**STANDARD OF REVIEW**

This Court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*.  *In re Anderson*, 811 F.3d 166, 171 (4th Cir. 2016); *Jacksonville Airport, Inc. v. Michkeldel, Inc.*, 434 F.3d 729, 731 (4th Cir. 2006). Decisions to admit or exclude evidence are reviewed for an abuse of discretion.  *See United States v. Young*, 248 F.3d 260, 266 (4th Cir. 2001) (citing *United States v. Hassouneh*, 199 F.3d 175, 182 (4th Cir. 2000)).

**ARGUMENT**

**I.   THE PROTECTIONS OF SECTION 8.01-35.1 ARE NOT AVAILABLE TO LECLAIRRYAN IN THE KNOWN CIRCUMSTANCES**

When it approved the Liquidating Trustee's Settlement with LeClairRyan, the bankruptcy court erred by finding that LeClairRyan was "entitled to . . . and . . . afforded the full protection" of section 8.01-35.1.  App. 950.  Section 8.01-35.1 applies only to contribution liability that arises from personal injury, injury to property, or wrongful death.  LeClairRyan, on the other hand, was allegedly liable to HDL for legal malpractice—which is a breach of contract claim for which only economic damages are available.  Thus, by immunizing LeClairRyan from contribution liability arising from its alleged legal malpractice, the bankruptcy court improperly and impermissibly expanded the protections of section 8.01-35.1 of the Virginia Code.

21

**A.     Section 8.01-35.1 does not apply to contribution liability that arises from economic loss in the absence of injury to person or property or wrongful death.**

For most of its history, Virginia common law applied the "release rule." *See Lackey v. Brooks*, 204 Va. 428, 432 (1963).  This anachronism, which derives from English law, holds that "the release of one joint tort-feasor releases the others jointly liable for the same wrong or injury." *Id.*; *see also* Linda Flory Rigsby, *The Covenant Not to Sue: Virginia's Effort to Bury the Common Law Rule Regarding the Release of Joint Tortfeasors*, 14 U. Rich. L. Rev. 809, 809 n.1 (1980) [hereinafter "Rigsby"] (citing William L. Prosser, THE LAW OF TORTS § 49, at 301 (4th ed. 1971)).

In contrast to a release, a covenant not to sue one joint tortfeasor does not—by itself—release other joint tortfeasors from liability to the injured party. *Lackey*, 204 Va. at 432.  Covenants not to sue are rarely given in isolation, though.  They are often exchanged by the injured party for a payment from the alleged tortfeasor.  Under Virginia common law, this payment constitutes an accord and satisfaction that, in turn, "effect[s] a release." *See Wright v. Orlowski*, 218 Va. 115, 120 (1977).  Virginia common law thus presents a paradox: the consideration typically given for a covenant not to sue would erase the beneficial effect of that form of settlement by releasing all joint tortfeasors from liability. *See id.*

In 1979, following a string of court decisions that declined to do so, the Virginia General Assembly "change[d] [this] rule of law[,] which tended to reward

22

a recalcitrant tort-feasor at the expense of a joint tort-feasor who was willing to settle out of court." *Hayman v. Patio Prods., Inc.*, 226 Va. 482, 486 (1984); *see also* Rigsby, *supra*, at 811–13 (describing the history of section 8.01-35.1).  That year—inspired by section 4 of the Uniform Contribution Among Tortfeasors Act—the General Assembly adopted section 8.01-35.1 of the Virginia Code.  *See id.* at 813–14.

As ascertained by the Supreme Court of Virginia, "the legislative intent [behind enacting section 8.01-35.1] was to promote the use of a covenant not to sue by permitting payment thereunder and discharge of one joint tort-feasor without causing the covenant to effect the release of other joint tort-feasors."  *Hayman*, 226 Va. at 487.  The General Assembly further fostered this policy in 1980 by amending section 8.01-35.1 "to include releases as well as covenants not to sue."  *Id.* at 486.

Then, in 2007, the General Assembly again amended section 8.01-35.1 to remove references to "tortfeasors."  The 2007 amendment responded to a decision by the Supreme Court of Virginia that barred a plaintiff's wrongful incarceration claim against his attorneys because they were not joint tortfeasors with the Commonwealth of Virginia.  2007 Boyd-Graves Conference Subcommittee Report at ¶ A; *Cox v. Geary*, 271 Va. 144, 153–54 (2006), *abrogated on other grounds, as recognized by William H. Gordon Assocs., Inc. v. Heritage Fellowship, United Church of Christ*, 291 Va. 122, 147 n.6 (2016).

23

The current iteration of section 8.01-35.1 provides, in relevant part, that

(A)    When a release or covenant not to sue is given in good faith to one of two or more persons liable for the same injury to a person or property, or the same wrongful death:

        (1)    It shall not discharge any other person from liability for the injury, property damage or wrongful death unless its terms so provide; but any amount recovered against the other person or any one of them shall be reduced by any amount stipulated by the covenant or the release . . . ; and

        (2)    It shall discharge the person to whom it is given from all liability for contribution to any other person liable for the same injury to person or property or the same wrongful death.

Although the references to "tortfeasors" are gone, the analysis of the injuries for which the protections of section 8.01-35.1 apply remains the same: the statute does not cover anything but contribution liability that arises from "the same injury to a *person* or *property* or the same *wrongful death*." *William H. Gordon Assocs.*, 291 Va. at 147 n.6 (emphases added); Va. Code Ann. § 8.01-35.1(A)(2). It does not apply to contribution liability that arises from contract-based economic loss.

Myriad Virginia cases that distinguish between liability for contract-based economic loss and liability that arises from personal and property injury bolster this conclusion. *See, e.g.*, *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 236 Va. 419, 422–25 (1988) (describing Virginia's economic loss rule and distinguishing the policy considerations "underlying tort law[—]the protection of persons and property from losses resulting from injury" from "the controlling policy

consideration underlying the law of contracts[, which] is the protection of expectations bargained for"); *Blake Const. Co., Inc. v. Alley*, 233 Va. 31, 36 (1987) ("Under the common law there could be no recovery . . . in tort for only economic loss in the absence of privity.")*; see also*, *e.g.*, *Dur v. W. Branch Diesel, Inc.*, 240 F. App'x 568, 571–72 (4th Cir. 2007) (affirming grant of summary judgment in negligence action for, *inter alia*, plaintiff's failure to show damage to person or property and not merely economic loss); *Beard Plumbing & Heating, Inc. v. Thompson Plastics, Inc.*, 152 F.3d 313, 316 (4th Cir. 1998) ("Virginia law is clear that, absent privity of contract, economic losses cannot be recovered in a negligence action."); *Crawford v. Deutsche Bank AG*, 244 F. Supp. 2d 615, 616–617 (E.D. Va. 2003) (collecting authorities for the points that "Virginia law is clear that, absent privity of contract, the economic loss rule prevents a plaintiff from maintaining a negligence action against an individual to recover purely economic losses" and that "tort law is designed to protect the safety of persons and property, while contract law seeks to protect bargained-for expectations.").

In addition, where the General Assembly intends to address economic loss in a statute, it states as much. *See, e.g.*, Va. Code Ann. § 18.2–186.6(I) (providing, in a statutory provision authorizing the Office of the Attorney General to bring actions for violations of notification requirements for privacy breaches, that "[n]othing in this section shall limit an individual from recovering direct economic damages from

a violation of this section.").  Indeed, the General Assembly has enacted legislation expressly distinguishing among personal injury, injury to property, wrongful "death," and "economic loss."  *See id*. § 59.1–155.1 (providing that a manufacturer, distributor, recycler, or seller of a product containing a bittering agent as required by statute "shall not be liable to any person for any personal injury, death, property damage, damage to the environment (including natural resources), or economic loss that results from the inclusion of [the bittering agent].").

Thus, when the General Assembly intends to include economic loss as a category of damages covered by a statute, it does so expressly.  *See, e.g.*, *JSR Mech., Inc. v. Aireco Supply, Inc.*, 291 Va. 377, 383 (2016) ("When the General Assembly omits language from a statute that is present in surrounding statutes, we find it to be an unambiguous manifestation of contrary intention of the legislature.") (internal quotations omitted) and *Virginia ex rel. Fair Housing Bd. v. Windsor Plaza Condo. Ass'n*, 289 Va. 34, 57 (2014) ("When the General Assembly has used specific language in one instance, but omits that language or uses different language when addressing a similar subject elsewhere in the Code, we must presume that the difference in choice of language was intentional.") (internal quotation omitted). That it did not do so in section 8.01-35.1 is telling—and dispositive.

26

**B.      Legal Malpractice is a breach of contract action for which only economic damages are available.**

The distinction between liability for economic loss and liability for injury to person or property or wrongful death is dispositive here.  The Liquidating Trustee asserted and proposed to resolve in the Settlement legal malpractice claims against LeClairRyan.  Legal malpractice is a breach of contract action for which only economic damages are available.  Thus, the bankruptcy court erred by entitling LeClairRyan to the protections of section 8.01-35.1, which, on its face, does not apply to liability for economic loss in the absence of injury to person or property or wrongful death.

The Supreme Court of Virginia has held on numerous occasions in recent years that the legal malpractice cause of action "is one for breach of contract." *Smith v. McLaughlin*, 289 Va. 241, 264–65 (2015) (internal quotations and citation omitted). *See also Thorsen v. Richmond Soc'y for the Prevention of Cruelty to Animals*, 292 Va. 257, 277 (2016) ("In Virginia, actions for legal malpractice are actions for breach of contract[.]"); *Smith*, 289 Va. at 265 ("The question of what damages are recoverable in a legal malpractice claim is therefore governed by [Virginia] law pertaining to what damages are recoverable in a breach of contract claim."); *Cox*, 271 Va. at 152 ("The premise of Cox's argument is that a legal malpractice action is based in tort, and the Attorneys and the Commonwealth are joint tortfeasors. Again, we do not agree."), *abrogated on other grounds, as*

27

recognized by *William H. Gordon Assocs.*, 291 Va. at 147 n.6; *see also McBride v. Tully Rinckey, PLLC*, No. 7:12–cv–00344 (JCT), 2012 WL 6582538, at *2, *3–4 (W.D. Va. Dec. 10, 2012) (dismissing with prejudice a "legal malpractice tort claim[,]" which Virginia law does not recognize).

Even more to the point, just last year the Supreme Court of Virginia confirmed that "[a] legal malpractice plaintiff may recover only pecuniary damages proximately caused by an attorney's breach of the contractually implied duties." *Smith*, 289 Va. at 266. And because legal malpractice constitutes a breach of contract claim under Virginia law for which only economic damages can be recovered, the Supreme Court of Virginia—in interpreting the pre-2007 version of the statute—has held that "the protection afforded by Code § 8.01-35.1" was "unavailable" in connection with the settlement of such a claim. *See Cox*, 271 Va. at 154, *abrogated on other grounds, as recognized by William H. Gordon Assocs.*, 291 Va. at 147 n.6; *see also Fid. Nat'l Title Ins. Co. v. Radford*, No. 7:15–cv–00018 (MFU), 2015 WL 6958291, at *5 (W.D. Va. Nov. 10, 2015) ("The Virginia Supreme Court has held that Virginia Code § 8.01-35.1, the statute governing the effect of a release or covenant not to sue a joint tortfeasor, does not apply to a legal malpractice claim because such a claim is contractual.").

By his own admission, the Liquidating Trustee's Settlement with LeClairRyan resolved "a legal malpractice claim[.]" App. 449; *see also, generally,*

App. 411–12 (defining the claims asserted in the Demand Letter as the "LeClairRyan Claims" and asserting that the Settlement resolved such).  Under binding Virginia law, such claims cannot give rise to the type of injury that triggers the application of section 8.01-35.1 for LeClairRyan—i.e., "injury to a person or property, or . . . wrongful death"—even if all of the other statutory requirements could be met.

Further, while the General Assembly amended section 8.01-35.1 in 2007 to remove references to "tortfeasors," the Supreme Court of Virginia has noted that "this [amendment] does not change the applicability of the injury analysis" that is dispositive here.  *William H. Gordon Assocs.*, 291 Va. at 147 n.6.  Neither the bankruptcy court nor the Liquidating Trustee offered any authority below to escape the conclusion that section 8.01-35.1 does not apply to contribution liability that arises from legal malpractice absent injury to person or property or wrongful death. Accordingly, the Court should reverse the decision of the bankruptcy court finding that LeClairRyan is "entitled to  . . . and . . . afforded the full protection" of section 8.01-35.1.  *See* App. 950.

> **C.**   **If in doubt, the Court should certify to the Supreme Court of Virginia the question of whether section 8.01-35.1 encompasses contribution liability that arises from economic loss absent injury to person or property or wrongful death**.

For the reasons described above, section 8.01-35.1 does not apply to contribution liability that arises from contract-based economic loss, and therefore to contribution liability that arises from legal malpractice absent injury to person or

property or wrongful death.  But if the Court has any doubt as to this conclusion, it should certify the question to the Supreme Court of Virginia.

The Supreme Court of Virginia accepts, in its discretion, certification of determinative questions of Virginia law for which no controlling precedent exists. Va. Sup. Ct. Rule 5:40(a).  Here, whether the protection from contribution liability for "injury to person or property or . . . wrongful death" granted by section 8.01-35.1 encompasses contribution liability for contract-based economic loss determines this appeal.  Va. Code. Ann. § 8.01-35.1(2).  Simply, if section 8.01-35.1 does not apply to contribution liability that arises from economic loss absent injury to person or property or wrongful death, then the bankruptcy court could not immunize LeClairRyan from such contribution liability (assuming *arguendo* that the bankruptcy court could have ignored the procedural impediments discussed *infra*, which is an independent basis for reversing its decision).

Further, the Liquidating Trustee has represented that no controlling precedent exists that is directly on point.  *See* App. 911 (describing the 2007 Boyd-Graves Conference Subcommittee Report's finding that "there is merely an open question as to joint liability for purely economic loss"), 1028 ("The fact is, the law is unclear in this situation . . . There is no Virginia case dealing with 35.1 that arises out of the Bankruptcy Court where you have a settlement, period.") (argument of R. Kanowitz); *see also* App. 1029 (argument of R. Kanowitz).

30

Thus, should the Court find it an open issue, asking the Supreme Court of Virginia to clarify whether section 8.01-35.1 applies to economic loss is an available and appropriate procedure. *See* Va. Sup. Ct. Rule 5:40(a)–(b) (stating that a "United States district court" may invoke certification); *see generally, e.g.*, *Allianz Ins. Co. v. Garrett*, 47 F.3d 665 (4th Cir. 1995) (certifying to the Supreme Court of Virginia the question of whether a settlement not in writing constituted a release for purposes of section 8.01-35.1) and *The David J. Pierce Trust U/A Dated Feb. 23, 2011 v. Alpha Natural Res., Inc.*, No. 3:16–cv–00709 (HEH), Dkt. 15 (E.D. Va. Dec. 21, 2016) (certifying in a bankruptcy appeal, *sua sponte*, question of state law to the Supreme Court of Wyoming).  In addition, certifying the question to the Supreme Court of Virginia would not cause any undue delay to any pending proceedings. This appeal presents a discrete dispute and does not implicate or otherwise affect any trial date or discovery in any proceeding.

## II.   THE BANKRUPTCY COURT WRONGLY PRE-ADJUDICATED LECLAIRRYAN'S ENTITLEMENT TO THE PROTECTIONS OF SECTION 8.01-35.1

Even if the Court could overlook the inapplicability of section 8.01-35.1 to economic loss in the absence of personal injury, property injury, or wrongful death, it must still vacate the judgment of the bankruptcy court.  Simply, the bankruptcy court wrongfully pre-adjudicated the rights of LeClairRyan and unnamed and unnoticed contribution plaintiffs in the absence of an actual case or controversy and

in the absence of a finding that LeClairRyan was jointly liable for the same injury to person or property or wrongful death.

## A.    The U.S. Constitution prohibits advisory opinions.

A fundamental principle of federal jurisprudence holds that federal courts cannot issue advisory opinions.  *See, e.g.*, *Flast v. Cohen*, 392 U.S. 83, 95 (1968) and *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. of Am., Div. 998 v. Wisconsin Emp't Relations Bd.*, 340 U.S. 416, 418 (1951) (collecting authorities); *see also* 13 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3529.1 (3d ed. 1998) ("The oldest and most consistent thread in the federal law of justiciability is that federal courts will not give advisory opinions.").

No mere technicality, this principle is an existential limitation on the authority of the federal judiciary.  It derives from the Constitution's restriction of federal courts' power to adjudicate only cases and controversies.  *Flast*, 392 U.S. at 96; *see also, e.g.*, *Hall v. Beals*, 396 U.S. 45, 48 (1969) (collecting authorities) and *Coffman v. Breeze Corp.*, 323 U.S. 316, 324–25 (1945) (the same).  Any judgment by a federal court "must resolve a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (internal quotation marks removed).

32

Accordingly, in enforcing the constitutional limits on the federal judiciary, the Supreme Court has stated that "[t]he question comes down to whether the facts alleged, under all the circumstances, show that there is a substantial controversy, *between parties having adverse legal interests, of sufficient immediacy and reality* to warrant the issuance of" a disposition.  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation removed; emphasis added).  When asked to rule on declaratory judgments that prematurely opined on the validity of anticipated affirmative defenses, the Supreme Court has held that such matters did not present justiciable cases or controversies.  *Calderon v. Ashmus*, 523 U.S. 740, 748–49 (1998); *see also Coffman*, 323 U.S. at 324.

### B.     A party's joint liability must first be determined before a court can address the protections of section 8.01-35.1.

As an analogue to the limitation against federal courts issuing advisory opinions, Virginia courts cannot, under the statutory scheme, address section 8.01-35.1 until the party asking for its protections has been found liable for the same injury to person or property or wrongful death with at least one other party.  Put another way, the time for a court to address the provisions of section 8.01-35.1 comes in the last stages of litigation, after a jury or court has determined the type, extent, and divisibility of plaintiff's injury and the defendants' collective liability for such. *See, e.g.*, *Askew v. Collins*, 283 Va. 482, 485–87 (2012) (discussing judgment reduction request made following return of jury verdict); *Acordia of Va. Ins. Agency,*

*Inc. v. Genito Glenn, LP*, 263 Va. 377, 382–83 (2002) (the same); *Tazewell Oil Co. v. United Virginia Bank/Crestar Bank*, 243 Va. 94, 115 (1992) (remanding for a determination "whether the amounts paid were based on the single injury of destruction of Tazewell, or whether some of the consideration covered releases for different injury or injuries suffered by Tazewell, or suffered by other parties"); *see also William H. Gordon Assocs.*, 291 Va. at 146 ("A party who wishes to obtain credit for a plaintiff's prior receipt of payment for the same injury from another co-defendant is required to make a motion, and bears the burden on that motion . . . The circuit court must make its determination after any jury verdict.") (internal citation omitted); *Am. Online, Inc. v. Nat'l Health Care Discount, Inc.*, 174 F. Supp. 2d 890, 901 n.13 (N.D. Iowa 2001) (applying Virginia Code § 8.01-35.1 in damages calculation only after finding of liability following bench trial) and *Oswald v. Holtzman*, No. CL–2013–16999, 2015 WL 10521430, at *3–4 (Va. Cir. Ct. Jan. 20, 2015) (addressing section 8.01-35.1 after determining the defendants' liability and imposing punitive damages).  Thus, the time to address the provisions of section 8.01-35.1 comes later, after a determination of the type and divisibility of plaintiff's injury and the defendants' liability has been made.

This procedural limitation is apparent from the face of section 8.01-35.1.  The statute does not speak of contingencies about potential future contribution liability.  It requires a finding that the released party seeking contribution immunization *is*

liable with at least one other party for the same injury to a person or property or for the same wrongful death. Va. Code Ann. § 8.01-35.1(A), (A)(2), (B). Further, section 8.01-35.1(A)(1) explicitly provides that "[a] release or covenant not to sue given pursuant to this section shall not be admitted into evidence in the trial of the matter but shall be considered by the court in determining the amount for which judgment shall be entered." Finally, the Supreme Court of Virginia has enforced this limitation. Earlier this year, for example, it reversed a trial court that applied section 8.01-35.1 to a settlement that addressed more than one type of injury associated with property damage without verifying that the settlement funds were allocated accurately to account for those distinct injuries. *William H. Gordon Assocs.*, 291 Va. at 145–49. Thus, absent a concrete determination that multiple parties are liable for the same injury to person or property or wrongful death, any ruling that deems section 8.01-35.1 applicable is error.

### C. Despite purported reassurances to the contrary, the bankruptcy court pre-adjudicated LeClairRyan's protection from contribution liability.

The bankruptcy court's immunization of LeClairRyan from contribution liability below violates both the Constitution's prohibition of advisory opinions and also the General Assembly's direction to address the protections of section 8.01-35.1 only after a party's joint liability for the same injury has been determined. First, no

other party has yet sued LeClairRyan for contribution.[11]   Notably, with respect to LeClairRyan's contribution liability, the law firm's interests are not adverse to the Liquidating Trustee's interests.   Thus, whether LeClairRyan is or is not liable for contribution to any other party is presently a hypothetical question incapable of resolution by a federal court.   And second, no court has determined that LeClairRyan and any other party are liable to HDL for the same injury to person or property or the same wrongful death.   The Court should therefore vacate the decision of the bankruptcy court entitling LeClairRyan to the protections of section 8.01-35.1.

That the bankruptcy court could not pre-adjudicate LeClairRyan's entitlement to the protections of section 8.01-35.1 should be an uncontroversial truth in this case. First, as an initial matter, the Liquidating Trustee did not seek such relief.   Indeed, the Liquidating Trustee noted in his filings that, "[f]or the avoidance of all doubt on the subject, [he was] not seeking a pre-adjudication of Section 35.1's impact upon any future claims or defenses that may be asserted[.]"   App. 909.   Such a determination, the Liquidating Trustee went on, "may be made in the future by [the bankruptcy court] or a court of competent jurisdiction."   *Id*.  Second, consistent with that representation, the Liquidating Trustee informed the bankruptcy court at the

---

[11]   The deadline for doing so in the Omnibus Complaint litigation is the subject of negotiations among the parties to the Omnibus Complaint and has not yet been set by the bankruptcy court.

9019 Hearing that the actual application of section 8.01-35.1 "is a later consideration." *Id.* at 1009 (cross-examination of R. Kanowitz).

Third, the bankruptcy court agreed that "[a]s far as the actual application of Section 8.01-35.1, that will come at a later time, maybe with other courts or whatever[.]" *Id.* at 1040 (statement by Huennekens, J.). The bankruptcy court further provided that it should not pre-adjudicate LeClairRyan's entitlement to the protections of section 8.01-35.1. To that point, it wrote in its Opinion that "[t]he appropriate time to make a determination about the application of [section 8.01-35.1] is in the future, when claims or defenses asserted by or against [third parties] are considered." *Id.* at 947.

The problem here is that, despite acknowledging orally and in its Opinion the impropriety of pre-adjudicating LeClairRyan's entitlement to the protections of section 8.01-35.1, the bankruptcy court did precisely that. Specifically, the bankruptcy court's Order approving the Settlement unambiguously and unequivocally "afford[s] [LeClairRyan] the full protection of Virginia Code § 8.01-35.1[.]" App. 950. Compounding the error, the Order incorporates by express reference Section 10 of the Settlement Agreement. Section 10 of the Settlement Agreement, in turn, broadly provides that the releases granted to LeClairRyan by the Liquidating Trustee "operate to discharge LeClairRyan from all liability for contribution to any other person alleged or found to be liable as a joint tortfeasor for

37

any and all claims released[.]"  *Id.* at 950, 962.  The Settlement Agreement then goes on to entitle LeClairRyan "to the benefits and protections available to released parties under Virginia [Code] § 8.01-35.1" and states that "the Bankruptcy Court shall retain jurisdiction over all proceedings in which a person or entity seeks to deprive LeClairRyan of such benefits and protections."  *Id.* at 962–63.

Because a court speaks through its orders, the bankruptcy court's correct pronouncements about the impropriety of a pre-adjudication of LeClairRyan's contribution immunity are legally ineffectual: the bankruptcy court's Order renders contradictory statements in its Opinion and during the 9019 Hearing meaningless. *See, e.g.*, *United States v. Lavabit*, 749 F.3d 276, 289 (4th Cir. 2014) ("When the terms of a judgment conflict with either a written or oral opinion or observation, the judgment must govern.") (internal quotation removed); *Murdaugh Volkswagen, Inc. v. First Nat'l Bank of S.C.*, 741 F.2d 41, 44 (4th Cir. 1984) ("Courts must speak by orders and judgments, not by opinions, whether written or oral, or by chance observations or expressed intentions made by courts during, before or after trial, or during argument."); *see also United States v. Duncan*, 38 F. App'x 128, 129 (4th Cir. 2002) ("Although a court speaks through its judgments and orders . . . in criminal cases the general rule is that the oral pronouncement of the sentence governs.") (internal citation omitted) and *Flannigan v. Consol. Rail Corp.*, 888 F.2d 127, 1989

WL 130634, at *2 (6th Cir. Nov. 2, 1989) ("Last, we note that a court speaks officially through its orders, not its opinions.") (unpublished).

Numerous parties raised this point in their written objections to the 9019 Motion and during the 9019 Hearing and asked that the Order be amended to conform to the Liquidating Trustee's and the bankruptcy court's stated intent. *See, e.g.*, App. 994, 1010, 1022–23, 1025, 1030–31, 1033–34 (statement of K. Funk, cross-examination of R. Kanowitz, arguments of K. Hroblak, J. Manson, J. Davis, and K. Funk); *see also* App. 1048–49 (emails from R. Kanowitz).   But the bankruptcy court declined to modify the Liquidating Trustee's proposed Order, choosing instead to enter it verbatim. *See* App. 1033 ("THE COURT: It seems like everyone is saying the same thing here, and why can't we just put that in the order then?  MR. KANOWITZ: It wasn't the deal, and I'm not going to get paid, and it's going to blow it up, and that's what they want.  THE COURT: Okay.").

As a result, the bankruptcy court's statements at the 9019 Hearing and in the Opinion that it ruled *only* that the Settlement is a "covenant not to sue, and negotiated in good faith at arm's length, and that's the extent[,]" is wholly inconsistent with its Order—which is the operative document under binding law. *Id.* at 1040 (statement of Huennekens, J.).  Through its Order, the bankruptcy court actually immunized LeClairRyan from contribution liability.  The Court should reverse and vacate that decision for the reasons described above.

### III. The Bankruptcy Court Abused Its Discretion by Excluding the Demand Letter From Evidence at the 9019 Hearing

During the 9019 Hearing, counsel for the Liquidating Trustee proffered the Demand Letter to the bankruptcy court for identification purposes and requested that it be accepted "under seal, preserving all privileges and confidentiality." *See* App. 995–97 (examination of R. Kanowitz and tender by C. Speckhart). Counsel for Warnick later moved the bankruptcy court to admit the Demand Letter into evidence.

The bankruptcy court initially admitted the Demand Letter so that it could "have a complete record." *Id.* at 1002–04 ("[T]he question is, if we're going to have a complete record, then we need to have it as part of the record. And so, with your objection, I'm going to admit [the Demand Letter] under seal.") (ruling of Huennekens, J.). But moments after doing so, the bankruptcy court backtracked. It decided to reconsider its first ruling and to instead exclude the Demand Letter from evidence on the ground that it "is completely protected under Federal Rule [of Evidence] 408[.]" *Id.* at 1007 (ruling of Huennekens, J.).

### A. The Demand Letter asserts ██████████ claims against LeClairRyan.

The Demand Letter is the clearest elucidation of claims against LeClairRyan that the HDL Liquidating Trust holds and resolved in the Settlement. Therein, the Liquidating Trustee—in his prior capacity as Chief Restructuring Officer of HDL—first ████████████████████████████████████████████

██████████████.  Demand Letter at 1–2.  The Liquidating Trustee then ███████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████.  *Id.* at 2–4.

The  Liquidating  Trustee  next  wrote  that,  █████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████.  *Id.* at 3.  ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████.  *Id.*  at 3.  ██████████████████████

███████████████████████████████████████████.  *Id.*  at  3–4.  ████

████████████████████████████████████████████████████

███████████████████████████████████.  Demand Letter at 4.

In addition, the Liquidating Trustee described ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

41

██████████████████. *Id.* ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████. *Id.*

at 5–6.

       Finally, the Liquidating Trustee alleged ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████. *Id.* at 8.

       Following this analysis, the Liquidating Trustee alleged ████████████

████████████████████████████████████████████████████

████████████████████████████████. *Id.* at 9.  He claims that ████

████████████████████████████████████.  Accordingly, the Liquidating

Trustee maintains that LeClairRyan ██████████████████████████████

██████████████████.  Demand Letter at 9.

## B.    The Demand Letter is not a settlement communication.

       As a threshold matter, the Demand Letter is not in the nature of a settlement

communication protected under Federal Rule of Evidence 408.  It is a unilateral

assertion of a claim for ████████████████████ caused by LeClairRyan's alleged

██████████ ; it is a series of allegations that LeClairRyan ████████████████████

to HDL; and it is an invitation to engage in settlement negotiations in the future.

Such volleys are not settlement communications subject to the limited protections of

Federal Rule of Evidence 408.   *See, e.g.*, *Rodriguez-Garcia v. Municipality of*

*Caguas*, 495 F.3d 1, 10–13 (1st Cir. 2007) (reversing finding that demand letter was

a settlement communication to which Federal Rule of Evidence 408 applied).   *Cf.*

*Winchester Packaging, Inc. v. Mobil Chem. Co.*, 14 F.3d 316, 319–20 (7th Cir. 1994)

(Posner, J.) ("Dunning a deadbeat by threatening to sue is not the same thing as

making an offer or demand in the context of settlement negotiation.").

    While the Liquidating Trustee slapped a superficial label on the Demand

Letter and noted in a single sentence that ████████████████████████ its

████████████ claim, the Demand Letter does not set forth any concessions that

the Liquidating Trustee was willing to make.   Nor had the Liquidating Trustee and

LeClairRyan engaged in mediation as of the transmission of the Demand Letter.   The

Demand Letter was an isolated initial salvo.   Accordingly, it is not a settlement

communication, and the bankruptcy court erred by excluding it from evidence at the

9019 Hearing on the sole ground that it was protected by Federal Rule of Evidence

408.   *See, e.g.*, *Winchester Packaging*, 14 F.3d at 319 (collecting authorities for the

point that "a bill that itemizes what the recipient owes him and demands—even

under threat of legal action—payment is not an offer in settlement or a document in settlement negotiations and hence is not excludable by force of Rule 408").

### C.  Federal Rule of Evidence 408 prohibits the use of settlement communications in only two inapplicable circumstances.

Even assuming *arguendo* that the Demand Letter is a settlement communication, Rule 408 did not bar its admission during the 9019 Hearing.  Under Rule 408, settlement communications are only inadmissible "either to prove or disprove the validity or amount of a disputed claim, or to impeach by a prior inconsistent statement or a contradiction[.]"  Fed. R. Evid. 408(a).  Settlement communications are, however, admissible for any other purpose.  Fed. R. Evid. 408(b); *see Coakley & Williams Const., Inc. v. Structural Concrete Equip., Inc.*, 973 F.2d 349, 353 (4th Cir. 1992) ("[S]ettlement offers are only inadmissible when offered to prove liability or damages.") and *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1161 n.9 (9th Cir. 2007) (stating that the "other [permissible] purpose[s]" mentioned in Rule 408(b) "are not an exhaustive list, but are instead only illustrative") (internal quotation marks and brackets omitted).

The Advisory Committee notes to Rule 408 are clear on this point.  They state that:

> Rule 408 previously provided that evidence was not excluded if offered for a purpose not explicitly prohibited by the Rule.  To improve the language of the Rule, it now provides that the court may admit evidence if offered for a permissible purpose.  There is no intent to change the process for admitting evidence covered by the Rule.  It remains the case

44

> that if offered for an impermissible purpose, it must be excluded, and if offered for a purpose not barred by the Rule, its admissibility remains governed by the general principles of Rules 402, 403, 801, etc.

Fed. R. Evid. 408, advisory committee notes to 2011 Amendments. *See also* Fed. R. Evid. 408, advisory committee notes to 1972 Proposed Rules ("Since the rule excludes only when the purpose is proving the validity or invalidity of the claim or its amount, an offer for another purpose is not within the rule."), advisory committee notes to 2006 (stating that "[t]he intent is to retain the extensive case law finding Rule 408 inapplicable when compromise evidence is offered for a purpose other than to prove the validity, invalidity, or amount of a disputed claim" and collecting authorities). In sum, then, if a party does not offer a settlement communication for a prohibited purpose, Federal Rule of Evidence 408 does not bar its admission.

### D. The Demand Letter identifies the nature of claims against LeClairRyan that the Settlement resolves.

Counsel for Warnick did not move the bankruptcy court to admit the Demand Letter into evidence for any prohibited purpose. He moved to admit the Demand Letter because it evidenced the nature of the claims that the Liquidating Trustee resolved in his proposed Settlement with LeClairRyan. *See* App. 1005 (argument of R. Frei). In the absence of a complaint filed against LeClairRyan, the Demand Letter is the only indication as to the nature of claims against the firm that the Liquidating Trustee settled.

Indeed, the 9019 Motion defined the claims being resolved during the parties'

mediation as those identified in the Demand Letter.[12]  *Id.* at 411–12.  So, too, did a

sworn Declaration filed by the Liquidating Trustee's counsel in support of the 9019

Motion, which analyzed *only* the "legal factors attendant to establishing a legal

malpractice claim" against LeClairRyan.  *Id.* at 449–551.  Given the dispute over the

bankruptcy court's finding that LeClairRyan was entitled to the protections of

section 8.01-35.1 and that statute's inapplicability to contribution liability arising

---

[12]  The Liquidating Trustee's description of the exact claims his Settlement with LeClairRyan resolves evolved close to the 9019 Hearing.  Initially, HDL preserved various claims against a number of parties.  *See* App. 404–05.  Then, the 9019 Motion noted that the Liquidating Trustee and LeClairRyan engaged in mediation of the claims asserted in the Demand Letter.  *Id.* at 411–12.  The declaration filed by the Liquidating Trustee in support of the 9019 Motion adopted the definition of "LeClairRyan Claims" used by the 9019 Motion—i.e., those claims asserted in the Demand Letter—and analyzed the probability of success on legal malpractice claims—and only legal malpractice claims—against LeClairRyan.  *Id.* at 448–51.  However, during the 9019 Hearing—after Warnick and others objected to the 9019 Motion, in part on the basis that section 8.01-35.1 does not apply to legal malpractice claims—counsel for the Liquidating Trustee testified that the Settlement encompasses extensive claims against LeClairRyan.  *Id.* at 999–1000 (direct examination of R. Kanowitz).

Regardless of whether the Settlement addresses any other claims, the Demand Letter indicates that the lion's share ███████████████████████████.  And when he asked the bankruptcy court to approve the Settlement, the Liquidating Trustee did so because it was a good resolution for the HDL Liquidating Trust of an uncertain and difficult "legal malpractice claim[.]"  *Id.*  Moreover, assuming *arguendo* that it did so, the Settlement's resolution of multiple types of claims compounds the bankruptcy court's error in prematurely addressing section 8.01-35.1.  That statute requires a threshold determination that two or more parties are liable for the same injury to person or property or for the same wrongful death, which analysis no court has performed.

from contract-based economic loss damages, the Demand Letter would have been highly relevant to the bankruptcy court's analysis.

Because Warnick's counsel did not move to admit the Demand Letter to dispute the validity or amount of claims that the Liquidating Trustee holds against LeClairRyan or to impeach the Liquidating Trustee by a prior inconsistent statement or contradiction, Federal Rule of Evidence 408—assuming *arguendo* that it could have applied—did not render the Demand Letter inadmissible.[13] *See, e.g., Basha v. Mitsubishi Motor Credit of Am. Inc.*, 336 F.3d 451, 454 n.4 (5th Cir. 2003) (finding argument that letters exchanged during settlement negotiations could not be used "to interpret the parties' settlement agreement" to be "meritless"); *Catullo v. Metzner*, 834 F.2d 1075, 1078–79 (1st Cir. 1987) (reversing exclusion of settlement communications, which were offered as proof of parties' intent, and remanding for a new trial); *Central Soya Co., Inc. v. Epstein Fisheries, Inc.*, 676 F.2d 939, 944 (7th Cir.1982) (explaining that evidence regarding a settlement may be admissible to demonstrate the settlement's terms).   Accordingly, the Court should reverse the bankruptcy court's decision to exclude the Demand Letter from evidence at the 9019 hearing.

---

[13]  See *supra* n.9 (noting that counsel for Warnick offered the bankruptcy court an alternative, redacted version of the Demand Letter).

## PRAYER FOR RELIEF

This Court should reverse and vacate the bankruptcy court's Order and judgment approving the Liquidating Trustee's Settlement with LeClairRyan. Alternatively, the Court should certify to the Supreme Court of Virginia the question of whether section 8.01-35.1 applies to contribution liability arising from contract-based, economic damages in the absence of injury to person or property or wrongful death. In addition, the Court should reverse the bankruptcy court's exclusion of the Demand Letter from evidence.

## ORAL ARGUMENT STATEMENT

This appeal warrants oral argument: the issues presented are complex, as are the factual record and the procedural history. In particular, Warnick believes that oral argument would aid the Court's analysis regarding the bankruptcy court's wrongful pre-adjudication of LeClairRyan's entitlement to the protections of section 8.01-35.1 of the Virginia Code. Further, the Federal Rules of Bankruptcy Procedure presume that oral argument will be allowed in an appeal. Fed. R. Bankr. P. 8019(b).

Dated: January 10, 2017                     Respectfully submitted,
      Richmond, Virginia

                                        */s/Ryan D. Frei*
                                        E. Duncan Getchell Jr. (VSB No. 14156)
                                        Dion W. Hayes (VSB No. 34304)
                                        Ryan D. Frei (VSB No. 70996)
                                        Kyle R. Hosmer (VSB No. 86417)
                                      McGuireWoods LLP
                                        Gateway Plaza
                                        800 East Canal Street

Richmond, VA 23219
Telephone:  804.775.1000
Facsimile:   804.775.1061
egetchall@mcguirewoods.com
dhayes@mcguirewoods.com
rfrei@mcguirewoods.com
khosmer@mcguirewoods.com

*Counsel for G. Russell Warnick*

49

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. Bankr. P. 8015(a)(7)(B)(i) because:

- This brief contains 10,707 words, excluding the parts of the brief exempted by Fed. R. Bankr. P. 8015(a)(7)(B)(iii).

This brief complies with the typeface and type style requirements of Fed. R. Bankr. P. 8015(a)(5)(A) because:

- This brief has been prepared in a proportionally spaced 14-point Times New Roman font using Microsoft Word.

/s/*Ryan D. Frei*

50

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2017, I electronically filed the foregoing Brief with the Clerk of this Court using the CM/ECF System, which will send a notification of electronic filing to all counsel of record who are registered CM/ECF users.

*/s/Ryan D. Frei*

51